IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

AARON GLAESER, )
)
   Plaintiff, )
)
v. ) Case No. 3:05cv1043
)
CHEATHAM COUNTY SHERIFF'S ) Judge Thomas A. Wiseman, Jr.
DEPARTMENT, MUNICIPAL GOVERNMENT )
OF CHEATHAM COUNTY, and )
JASON LITTLEJOHN, )
)
   Defendants. )

## MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss (Doc. No. 17), in which the Defendants assert that they are entitled to judgment in their favor as a matter of law under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As discussed below, the Court finds that Defendants motion must be denied.

**I.   FACTS**

The Complaint alleges that Plaintiff Aaron Glaeser was operating his vehicle on the public streets of Cheatham County, Tennessee on or about December 12, 2004. Defendant, Deputy Jason Littlejohn, encountered Mr. Glaeser while he was on patrol. Deputy Littlejohn alleges that Mr. Glaeser was speeding and that he gave pursuit. In the course of such pursuit, Deputy Littlejohn violated departmental policies, including through the use of deadly force. At some point in the course of pursuit, Deputy Littlejohn fired his weapon approximately five (5) times, striking Mr. Glaeser's vehicle and person. Mr. Glaeser suffered injuries as a result of Deputy Littlejohn's actions and was transported by ambulance to Vanderbilt Medical Center.

Based upon these facts, Mr. Glaeser brings a claim against Deputy Littlejohn for alleged use of excessive force in violation of Mr. Glaeser's constitutional rights. He also asserts negligence claims against Defendant Cheatham County Sheriff's Department and the Municipal Government of Cheatham County for negligent hiring, training, disciplining and monitoring their officers and employees.

In addition to the allegations in the Complaint, Defendants premise their Motion to Dismiss on the fact that after the incident described above, Mr. Glaeser pleaded guilty to and was convicted of the offenses of "reckless endangerment–deadly weapon involved" (a Class E felony) and "evading arrest (risk of death)" (a Class D felony). (*See* Doc. No. 17, Ex. 1 (8/31/2006 Judgments in the Criminal/Circuit Court of Cheatham County, Tennessee).) In his response, Mr. Glaeser does not dispute that he did in fact plead guilty to and was convicted of the referenced felonies. He simply argues that these convictions do not entitle the Defendants to judgment in their favor as a matter of law.

## II. STANDARD OF REVIEW

Under Rule 12 of the Federal Rules of Civil Procedure, a defendant may seek dismissal of the complaint, or certain causes of action set forth therein, based upon the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the plaintiff. *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 605 (6th Cir. 2005). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). The Court is not required, however, to "accept as true legal conclusions or unwarranted factual inferences." *Bovee v. Coopers & Lybrand, C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) (internal quotation marks and citation omitted).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted). Defendants, in support of their motion to dismiss, have attached a copy of Mr. Glaeser's state court Judgments of conviction. Because the Judgments are public records, the Court may consider them without converting Defendants' motion into one for summary judgment under Rule 56, particularly in view of the fact that Mr. Glaeser has not objected to consideration of his state court Judgments. *Cf. Fairley v. Zelenik*, 888 F. Supp. 89 (N.D. Ill.

2

1995) (holding that consideration of a document attached to the defendant's motion but not to the plaintiff's complaint in that case did nor require the court to convert a motion to dismiss into a motion for summary judgment, in part because the plaintiff never objected to the court's consideration of the document).

## III.  DISCUSSION AND ANALYSIS

Defendants make three arguments:  (1) that Plaintiff cannot proceed with a 42 U.S.C. § 1983 action because he has failed to show his conviction for reckless endangerment has been eliminated, citing *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) similarly, that Plaintiff is collaterally estopped from arguing that Defendant Jason Littlejohn, a Deputy with the Cheatham County Sheriff's Department, used excessive force in light of Plaintiff's guilty plea and conviction of the charge of reckless endangerment; and (3) that Defendants are entitled to qualified immunity where the Plaintiff has not shown that Deputy Littlejohn acted unreasonably in violating Plaintiff's clearly established constitutional rights given Plaintiff's guilty plea to reckless endangerment.  Finally, Defendants argue in passing that if the constitutional claim against Defendant Littlejohn is dismissed, the Court should decline to exercise jurisdiction over the remaining state-law negligence claims.  The Court will address each of these arguments in turn.

### A.  The Effect of Plaintiff's Conviction for Reckless Endangerment on his Excessive Force Claim Under *Heck v. Humphrey*

Defendants assert that, "in an action for damages for [an] allegedly unconstitutional conviction or imprisonment, or for *other harm* caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal" or otherwise been determined to be invalid or at least called into question.  (Doc. No. 18 at 3–4 (quoting *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (emphasis added)).)  In *Heck*, the Supreme Court further stated that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."  *Id.* at 487.  Still quoting *Heck*, Defendants point out that, "[i]n the face of a state prisoner's suit for damages pursuant to 42 U.S.C. § 1983, the district court 'must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be

3

dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." (Doc. No. 18, at 4 (quoting *Heck*, 512 U.S. at 487).)

Defendants argue that *Heck* applies to Mr. Glaeser's excessive force claim in this case, because it falls within the scope of "other harm" that the Supreme Court has recognized would not be actionable as a result of his conviction:

> An example of this latter category – a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful – would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest . . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. *In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, . . . the § 1983 action will not lie.*

*Heck*, 512 U.S. at 487 n.6 (emphasis added; internal citations omitted). In the case at bar, Mr. Glaeser does not state a claim for wrongful arrest or unreasonable seizure. Rather, he states a claim for excessive force used in conducting an otherwise lawful arrest. The issue then, under *Heck*, is whether proving the excessive force claim would require negating some element of the offense of which he has been convicted, namely "reckless endangerment – deadly weapon involved."[1]

Defendants assert in a conclusory fashion that *Heck* obviously applies, but they have not provided the elements of the crime of reckless endangerment or addressed which of those elements would be negated by a claim of excessive force.[2] In fact, the applicable Tennessee statute provides that a person commits the crime of reckless endangerment with a deadly weapon if he recklessly engages in conduct that places or *may* place another person in imminent danger of death or serious bodily injury, and commits this offense with a deadly weapon. Tenn. Code Ann. § 39-13-103. "Deadly weapon" is defined, for purposes of this offense, as both (1) "[a] firearm or anything manifestly

---

[1] The Defendants do not address the effect of Mr. Glaeser's conviction for evading arrest on his excessive force claim.

[2] The sum total of Defendants' argument in this regard is as follows: "By comparing the elements of the Plaintiff's criminal conviction, specifically for reckless endangerment – deadly weapon involved, and his claim against Deputy Littlejohn in the pending Complaint for excessive use of force, it can only be concluded that a judgment in Plaintiff's favor in this matter would call into doubt his prior criminal convictions and sentence." Defendants do not perform the referenced comparison, however.

4

designed, made or adapted for the purpose of inflicting death or serious bodily injury" or (2) "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tenn. Code Ann. § 39-11-106(5).

With respect to the elements of a Fourth Amendment claim of excessive force, the Supreme Court has defined its contours as follows:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted).

Taking the facts alleged in the Complaint as true and drawing all reasonable inferences in favor of the Plaintiff, the Court cannot conclude at this stage in the proceedings that Mr. Glaeser has failed to state a § 1983 claim against Deputy Littlejohn based upon the use of excessive force in effecting his arrest. The conviction for reckless endangerment does not indicate whether Mr. Glaeser engaged in conduct that *actually* placed another person in imminent danger, or instead engaged in conduct that *could* have placed another in danger. Likewise, there is no indication as to what "deadly weapon" he used in committing this offense, whether firearm or vehicle, nor when or under what circumstances, in the course of the pursuit, Deputy Littlejohn fired his weapon. The actual facts giving rise to the charge against Mr. Glaeser will determine the reasonableness of the degree of force used to effect his arrest. The Court therefore finds, for purposes of Defendant's Motion to Dismiss, that *Heck* does not bar Mr. Glaeser's excessive force claim.

  **B.  Whether Plaintiff Is Estopped From Raising a Claim for Excessive Force by Reason of His Conviction for Reckless Endangerment**

Defendants also argue that Mr. Glaeser's state court conviction for reckless endangerment has a preclusive effect on his excessive force claim. This argument is unavailing for the same reason that

5

*Heck* does not bar the excessive force claim.

Defendants are correct that the *res judicata* effect of state-court decisions in § 1983 actions is a matter of state law. *Heck*, 512 U.S. at 480. Under Tennessee law, collateral estoppel is appropriate where: (1) the issue sought to be precluded is identical to the issue decided in the earlier suit; (2) the issue was actually litigated and decided on its merits in the earlier suit; (3) the judgment in the earlier suit has become final; (4) the party against whom collateral estoppel is sought was a party to the earlier suit; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue sought to be precluded. *Beaty v. McGraw*, 15 S.W.3d 819, 824–25 (Tenn. Ct. App. 1998). It is likewise clear that, under Tennessee law, a criminal conviction will have a preclusive effect on a subsequent civil suit in which the party convicted on his own guilty plea seeks to assert that he did not convict the criminal act for which he was convicted. *See Gibson v. Grant*, 58 S.W.3d 103, 114 (Tenn. 2001) (holding that defendant must obtain post-conviction relief in order to maintain legal malpractice claim against his former criminal defense attorneys).

Defendants assert that Mr. Glaeser's guilty plea to the charge of reckless endangerment "operates as admission that he placed Deputy Littlejohn in danger of death or serious bodily injury," such that Deputy Littlejohn was empowered to use deadly force. (Doc. No. 18, at 7.) Again, however, Defendants do not address the specific elements of the crimes to which Mr. Glaeser pleaded guilty, the actual facts underlying his conviction or how they relate to the allegations of excessive force. Of course, "[d]ismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Trzebuckowski*, 319 F.3d at 855 (6th Cir. 2003). Under that standard, for the same reasons that *Heck* does not apply, the Court cannot find that Mr. Glaeser's excessive force claim is necessarily precluded by his guilty plea and conviction for reckless endangerment.

    **C.**    **Whether Deputy Littlejohn Is Entitled to Qualified Immunity to the Claim of Excessive Force in Conducting the Arrest**

Finally, the Court is called upon to determine whether Deputy Littlejohn is entitled to qualified immunity to the excessive force claim.

Generally, public officials performing discretionary functions are entitled to qualified immunity

6

and are protected from defending a § 1983 action when their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether qualified immunity attaches to an officer's conduct is a legal question, to be determined by the judge prior to trial, assuming that the question does not depend upon a jury determination of contested material facts. *Walton v. City of Southfield*, 995 F.2d 1331, 1335 (6th Cir. 1993). Qualified immunity, when applicable, is not simply a defense to liability in the underlying case; it provides immunity from suit altogether, shielding officials from the burdens of discovery and costs of trial. *Comstock v. McCrary*, 273 F.3d 693, 702 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The Sixth Circuit evaluates qualified immunity claims using a two-part inquiry: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and if so, (2) whether that right was clearly established. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Myers v. Potter*, 422 F.3d 347 (6th Cir. 2005)).[3] When the defense of qualified immunity is raised, it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity. *Ciminillo*, 434 F.3d at 466; *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

The Sixth Circuit has held that the right to be free from excessive force is a clearly established right for purposes of considering the issue of qualified immunity. *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001). "When making a qualified immunity analysis, it is important to remember that

---

[3]One line of Sixth Circuit cases holds that the qualified immunity evaluation involves a tripartite analysis, adding a third question to the two questions set forth above: "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *See, e.g.*, *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). The Court finds that those cases addressing this third question have done so exclusively in the context of summary judgment when the facts are better developed than they are here. *See also Estate of Carter v. City of Detroit*, 408 F.3d 305, 310–11 n.2 (observing that some panels of the Sixth Circuit have occasionally applied a three-step analysis, but that "both the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz* . . . . In cases subsequent to *Saucier* the Supreme Court has not formally broken up the two steps prescribed by *Saucier* into three steps, but the three-step approach may in some cases increase the clarity of the proper analysis. In many factual contexts, however, including this one, the fact that a right is "clearly established" sufficiently implies that its violation is objectively unreasonable." (citations omitted)).

the defendant is, in essence, saying: 'If the plaintiff's version is credited, what I did, judged today, *arguendo* would be wrongful, but at the time I acted, no reasonable officer would have known he was acting wrongfully.' " *Kain v. Nesbitt*, 156 F.3d 669, 671 (6th Cir. 1998) (citation omitted). Under Sixth Circuit cases analyzing the qualified immunity issue in excessive force cases, the question of whether a reasonable officer would have known his conduct violated clearly established constitutional rights can be answered by the initial inquiry of whether the officer's use of force was objectively reasonable. *See Martin v. Heideman*, 106 F.3d 1308, 1312–13 (6th Cir. 1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993). It is clear from the Sixth Circuit's analysis in these and other excessive force decisions that, having concluded that the right to be free from excessive force is clearly established, whether to grant qualified immunity in a particular case depends upon whether the officer did, in fact, use excessive force (*i.e.*, force that was not objectively reasonable). *Martin*, 106 F.3d at 1312–13; *Walton*, 995 F.2d at 1342; *Kain*, 156 F.3d at 672–73. In other words, if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful. *See Kostrzewa*, 247 F.3d at 642 (holding that the district court had erred in dismissing plaintiff's complaint on qualified immunity grounds where it could not be stated that the plaintiff could prove no set of facts that would have entitled him to relief).

In this case, Mr. Glaeser asserts that Deputy Littlejohn acted unreasonably in the degree of force used against him. While it is clear that Mr. Glaeser's convictions for reckless endangerment and evading arrest are highly relevant to the consideration of whether Deputy Littlejohn's use of force was objectively reasonable, construing the complaint in the light most favorable to the Plaintiff and drawing all inferences in his favor, the Court finds that it cannot state that the Plaintiff will be unable to prove a set of facts consistent with his complaint that would entitle him to relief even in light of his state-court convictions. Using deadly force against a speeding or even a reckless driver will not always be objectively reasonable. Because it is not clear that a reasonable officer in the defendants' situation would not have known that engaging in the conduct alleged by Mr. Glaeser was violative of his clearly established right to be free from excessive force, Defendants' Rule 12(b)(6) motion on the basis of

8

qualified immunity must be denied at this stage in the proceedings. *Cf. Hayes v. Wickert*, No. C06-5402RJB, 2006 U.S. Dist. LEXIS 84316, at *13–*14 (W.D. Wash. Nov. 20, 2006) (holding that material issues of fact precluded summary judgment on defendant police officer's qualified immunity defense, even where it was undisputed that the plaintiff had run a stop sign, was speeding, was driving without headlights at night, was driving into oncoming lanes to avoid having to take curves, and had committed the felony of evading arrest, because it was not clear whether the plaintiff posed an "immediate threat to the safety" of the officer or others at the time the officer actually used deadly force).

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's § 1983 claim must be denied. Because the Court will retain jurisdiction of that claim, Defendants' argument in support of dismissing the state negligence claims is also unavailing.

An appropriate Order will enter.

*[signature]*
Thomas A. Wiseman, Jr.
Senior U.S. District Judge