# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

AARON GLAESER,     )
           )
  Plaintiff,      )
           )
v.           )   Case No. 3:05cv1043
           )
CHEATHAM COUNTY SHERIFF'S  )   Judge Thomas A. Wiseman, Jr.
DEPARTMENT, MUNICIPAL GOVERNMENT )
OF CHEATHAM COUNTY, and   )
JASON LITTLEJOHN,    )
           )
  Defendants.     )

## MEMORANDUM OPINION

Before the Court is the Defendants' Motion for Summary Judgment (Doc. No. 32) in which Defendants[1] assert that Defendant Jason Littlejohn is entitled to judgment in his favor on Plaintiff's § 1983 claim on the grounds of qualified immunity or, alternatively, on the basis of collateral estoppel and the principle articulated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Because summary judgment in favor of Littlejohn is warranted under *Heck v. Humphrey* and/or collateral estoppel, as discussed below, the Court does not reach the issue of qualified immunity. Further, having concluded that dismissal of Plaintiff's federal claim is appropriate, the Court will decline to exercise jurisdiction over Plaintiff's supplemental state-law claims against Defendant Cheatham County, and the matter will be dismissed in its entirety.

## I. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding

---

[1] Deputy Jason Littlejohn and the Municipal Government of Cheatham County are the only two defendants remaining in this case, the claims against the Cheatham County Sheriff's Department having previously been dismissed.

that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).  In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587; *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).  Justifiable inferences based on facts are also to be drawn in favor of the non-movant.  *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999).  "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' "  *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Liberty Lobby*, 477 U.S. 242, 249).

## II.      FACTS and PROCEDURAL BACKGROUND

On the evening of December 12, 2004, Deputy Jason Littlejohn was patrolling the Bandy Road area of Cheatham County, Tennessee, when two vehicles passed him driving 61 miles per hour in a 35-mile-per-hour zone, with one vehicle tailgating the other.  At the time the two speeding vehicles passed Deputy Littlejohn, it was dark and raining.  Littlejohn turned his patrol car around to catch up with the two vehicles and began to pursue them in an attempt to stop them.  Littlejohn activated his patrol car's emergency equipment (i.e., lights and siren) at the time he began his pursuit.

One of the vehicles involved in the chase was operated by the plaintiff, Aaron Glaeser.  According to Glaeser, he and his friend, Nicholas MacLeod, were "playing around speeding." (October 20, 2006 Deposition of Aaron Glaeser ("Glaeser Dep.") at 51:13–15.)  Neither Glaeser nor his friend stopped after they became aware of pursuit by a patrol car with its lights activated; instead, they both increased their speed.  Glaeser chose not to stop because he was on probation for a D.U.I. and his license was suspended.  (Glaeser Dep. at 56.)

During the chase, MacLeod's vehicle was initially in front of Glaeser's, with Littlejohn behind both of them in his patrol car.  After MacLeod turned  off of Vanity Road onto Valley View Road, Glaeser passed his friend's vehicle as they went around a curve.  When Glaeser was far enough ahead that he no longer heard the patrol car's siren, he pulled off onto Waynoe Road, a single-lane gravel/asphalt road that dead-ends at a resident's yard. (Glaeser Dep. at 55:15–18.)  Glaeser came to a stop in the middle of the road and turned off his headlights and his ignition, anticipating that MacLeod and Littlejohn would continue straight on Valley

View Road rather than turning onto Waynoe Road. (*See* Glaeser Dep. at 60:10–12.) However, a couple of minutes later, MacLeod, closely followed by Littlejohn, turned onto Waynoe Road as well.

At this point, the Defendants' and the Plaintiff's versions of the facts begin to diverge significantly. According to the Defendants, when Littlejohn turned onto Waynoe Road, he saw both vehicles stopped at the end of the road. Littlejohn claims he stopped his patrol car, drew his weapon and exited his vehicle. About the time Littlejohn was getting out of his car, Glaeser restarted his vehicle, turned around in the yard and began driving toward the entrance of Waynoe Road and straight toward Littlejohn's patrol car. According to Littlejohn, Glaeser was not slowing down as he approached Littlejohn, so, when Glaeser's vehicle was approximately eight feet away from Littlejohn and headed straight for him, the deputy began firing shots at Glaeser's vehicle and moved out of the way of the approaching vehicle.

According to Glaeser, however, as MacLeod came up right behind him on Waynoe Road, Glaeser restarted his car, and Littlejohn chased both vehicles to the end of the road. (Glaeser Dep. at 51:24 – 52:3.) Glaeser came to a stop in the driveway at the end of the road, with MacLeod's car right behind him and Littlejohn behind MacLeod. As soon as Littlejohn stopped, Glaeser began moving again: He circled through the resident's yard, came around by a telephone pole "probably six or eight feet off the side of the driveway." (Glaeser Dep. at 52:6–8.) He drove through the field on the left side of the road before he came back onto the road. He did not come back onto the road until "probably 20 feet" after he had passed Littlejohn's car. (Glaeser Dep. at 64:21–25.) When he was approximately even with Littlejohn's car, that is, parallel to it and about eight feet away, Littlejohn got out of his vehicle and "opened fire." (Glaeser Dep. at 52:9–10, 66:9–10.)

Further, according to Glaeser, none of Littlejohn's shots were fired at the front of his car, despite Littlejohn's claim that Glaeser was "trying to run him over," and of the five shots fired, three came after Glaeser had already passed Littlejohn. In Glaeser's words, at the time the Littlejohn opened fire, "there was no way [Littlejohn] could have mistaken me as trying to come at him . . . [b]ecause I was already going past him." (Glaeser Dep. at 66:21–22, 23–25.)

Glaeser was actually stopped by another deputy and charged with multiple offenses. He ultimately pleaded guilty to the charges of Evading Arrest (Risk of Death) (a Class D Felony) and Reckless Endangerment-Deadly Weapon Involved (a Class E Felony). He was taken to Vanderbilt Hospital the evening

of the arrest for treatment of unspecified injuries resulting from gunshot wounds. He is currently incarcerated and serving sentences for the offenses to which he pleaded guilty.

There is no indication in the record regarding how seriously Glaeser was injured, but he brings a claim against Deputy Littlejohn for alleged use of excessive force in violation of Mr. Glaeser's constitutional rights. He also asserts state-law negligence claims against the Municipal Government of Cheatham County for negligent hiring, training, disciplining and monitoring their officers and employees. The Court initially denied the Defendants' motion to dismiss. The Defendants now bring their motion for summary judgment on the same grounds as the motion to dismiss but after having conducted discovery.

**III.    DISCUSSION AND ANALYSIS**

Defendants argue that, regardless of whether Littlejohn is entitled to qualified immunity, Glaeser is barred from bringing his § 1983 excessive force claim by the rule articulated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), and by the doctrine of collateral estoppel. For the reasons set forth below, the Court finds that summary judgment on this ground is warranted.

The *res judicata* effect of state-court decisions in § 1983 actions is a matter of state law. *Heck*, 512 U.S. at 480. Under Tennessee law, collateral estoppel is appropriate where: (1) the issue sought to be precluded is identical to the issue decided in the earlier suit; (2) the issue was actually litigated and decided on its merits in the earlier suit; (3) the judgment in the earlier suit has become final; (4) the party against whom collateral estoppel is sought was a party to the earlier suit; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue sought to be precluded. *Beaty v. McGraw*, 15 S.W.3d 819, 824–25 (Tenn. Ct. App. 1998). Thus, a criminal conviction will have a preclusive effect on a subsequent civil suit in which the party convicted on his own guilty plea seeks to assert that he did not commit the criminal act for which he was convicted. *See Gibson v. Grant*, 58 S.W.3d 103, 114 (Tenn. 2001) (holding that defendant must obtain post-conviction relief in order to maintain legal malpractice claim against his former criminal defense attorneys).

Along the same lines, in *Heck*, the Supreme Court recognized that, in the face of a state prisoner's suit for damages under § 1983, the district court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be

dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 480. *Heck* therefore requires this Court to consider whether a judgment in favor of Glaeser on his excessive force claim would "imply the invalidity" of his conviction for "reckless endangerment – deadly weapon involved."[2] In other words, under both *Heck* and the doctrine of collateral estoppel, the question for the Court is this: If we accept Glaeser's version of events as true for purposes of his § 1983 claim, would any of the necessary elements of his conviction for reckless endangerment implicitly be negated? If so, the § 1983 claim must be dismissed. However, if Glaeser's action, "even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487.

The Tennessee reckless-endangerment statute provides that a person commits the crime of reckless endangerment with a deadly weapon if he "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury," and commits this offense with a deadly weapon. Tenn. Code Ann. § 39-13-103. "Deadly weapon" is defined, for purposes of this offense, as both (1) "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury" or (2) "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tenn. Code Ann. § 39-11-106(5). An automobile may be considered a "deadly weapon" for purposes of the statute. *State v. Wilson*, 211 S.W.3d 714, 719 (Tenn. 2007). A person acts recklessly "when the person is aware of but consciously disregards a substantial and unjustifiable risk." Tenn. Code Ann. § 39-11-302(c). That "risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." *Id.*; *State v. Hawthorne*, No. W2005-02320-CCA-R3-CD, 2007 WL 316405, at *5 (Tenn. Ct. Crim. App. Feb. 2, 2007).

Further, the Tennessee Supreme Court has clarified that for the threat of death or serious bodily injury to be "imminent," the person must be placed in a reasonable *probability* of danger as opposed to a mere *possibility* of danger. *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999), citing *State v. Fox*, 947 S.W.2d 865, 866 (Tenn. Ct. Crim. App. 1996) (holding that defendant's act of discharging a gun into a tree did not constitute

---

[2]The Defendants do not address the effect of Glaeser's conviction for evading arrest on his excessive force claim.

felony reckless endangerment absent a showing that the discharge "create[d] an imminent risk of death or serious bodily injury to some person or class of persons"). Thus, to obtain a conviction for felony reckless endangerment, the state must prove that a person or class of persons was actually in the area in which a reasonable probability of danger existed. *Payne*, 7 S.W.3d at 28.

In the instant case, the only conduct alleged by either party that could support the reckless endangerment conviction is Glaeser's act of turning his car around and heading back toward Littlejohn at the end of Waynoe Road.[3] Glaeser claims, however, that he was not actually heading toward Littlejohn but was instead already driving past him at the time Littlejohn fired the shots, and therefore that Littlejohn had no probable cause for believing he was in imminent danger. In other words, Glaeser effectively denies that he acted recklessly or that his act endangered or could have endangered Littlejohn, or that he was wielding his automobile as a deadly weapon, all necessary elements of the conviction for reckless endangerment to which he pleaded guilty. Judgment in favor of Glaeser on his § 1983 claim would only be appropriate, if at all, if the finder of fact believes Glaeser's version of events instead of Littlejohn's. Consequently, a judgment in favor of Glaeser would require negating several of the elements of the offense of "reckless endangerment – deadly weapon involved." Because Glaeser's action, if successful, will "demonstrate the invalidity of [an] outstanding criminal judgment against [him]," *Heck*, 512 U.S. at 487, Glaeser's § 1983 claim must be dismissed.[4]

---

[3] Defendants contend that the neighborhoods in which the high-speed chase and the shooting occurred were residential, but neither party has offered evidence that there were any pedestrians or other cars in the area that night who were subject to a real threat of injury as a result of Glaeser's behavior, nor do the parties contend that the chase itself pose a direct threat to Littlejohn. Thus, under Tennessee law as articulated above, the reckless endangerment charge could not have arisen merely from the high-speed chase and Glaeser's evasion of arrest, because there is no evidence that there were other cars or pedestrians on the road whom Glaeser actually endangered that night.

[4] Although the Court finds it unnecessary to discuss this topic at length, it is apparent that the conflicting facts regarding exactly what was going on at the time the shots were fired would preclude summary judgment on qualified immunity grounds, since there is a disputed issue of fact as to whether Littlejohn had a reasonable basis for believing he was in threat of imminent harm at the time he engaged in the use of deadly force. *Cf. Sigley v. City of Parma Heights*, 437 F.3d 527, 536 (6th Cir. 2006) (reversing summary judgment for the defendant on qualified immunity grounds were there was a disputed issue of fact as to whether the police officer who used deadly force had, at the time, probable cause to believe the decedent posed a significant threat of death or serious physical injury to himself or others). Under *Sigley*, if a jury believes Glaeser's version of events, Glaeser would be entitled to judgment in his favor on his § 1983 claim, If, on the other hand, a jury believed Littlejohn's version of events, then qualified immunity would be appropriate. *Cf. Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (affirming summary judgment on the basis of qualified immunity where the police officer who had shot the plaintiff when he was trying to evade arrest by

For that reason, the Court finds that Littlejohn is entitled to summary judgment under *Heck* and on the grounds of collateral estoppel.

## IV.    CONCLUSION

The Court finds that Defendant Jason Littlejohn is entitled to summary judgment in his favor under *Heck v. Humphrey* and the parallel doctrine of collateral estoppel because, in order for Glaeser to prove that he is entitled to relief under § 1983, he must negate the necessary elements supporting his conviction for felony reckless endangerment, which he has not been shown to be invalidated.  The Court will therefore grant summary judgment on that basis.  The Court will dismiss Plaintiff's § 1983 claim and, having thus disposed of the only federal claim in this action, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claims against Defendant Cheatham County.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

escaping in a vehicle, presented uncontroverted testimony that at the time she shot him, she was "fearful for the other officers on foot who [she] believed were in the immediate area, [and] for the occupied vehicles in [Haugen's] path and for any other citizens who might be in the area"); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (affirming summary judgment on qualified immunity grounds where the undisputed facts indicated that the police officer who shot the plaintiff's decedent had a reasonable basis for believing the decedent posed an immediate and major threat of danger to other police officers).  Of course, if judgment for Littlejohn were appropriate based on Littlejohn's version of the facts, *Heck* would not apply.  Thus, Glaeser is in a classic Catch-22 quandary:  If a jury believes his version of events, meaning he would be entitled to a judgment in his favor on his § 1983 claim, he loses under *Heck*; if a jury believes Littlejohn, Glaeser loses under qualified immunity.